**UNITED MILK PRODUCTS COMPANY, a Delaware Corporation, Plaintiff-Appellant,**

v.

**LAWNDALE NATIONAL BANK OF CHICAGO, a National Banking Association, Defendant-Appellee.**

No. 16363.

United States Court of Appeals Seventh Circuit.

Feb. 29, 1968.

Rehearing Denied April 15, 1968.

Donald S. Manion, Harold S. Lansing, Ronald B. Kaplan, Nicholas G. Manos and Bernard M. Kaplan, Chicago, Ill., for plaintiff-appellant.

Samuel W. Block, John G. Stifler, David Altman, Chicago, Ill., for appellee; Raymond, Mayer, Jenner & Block, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

This suit by United Milk Products Company (United) has four counts, two of which seek recovery of money damages under the diversity statute, 28 U.S.C. § 1332, and two of which seek to rescind certain allegedly fraudulent transfers. The second two counts are brought by United under the auspices of the creditors committee formed in its Chapter 11 bankruptcy proceeding. The four counts arise from allegedly unauthorized transactions between United's officers and the defendant, Lawndale National Bank of Chicago (Bank). The district court dismissed United's original and first amended complaint, on defendant's motions for failure to state claims upon which relief could be granted. United has appealed. We affirm.

The motion to dismiss admits the following facts. United is a Delaware corporation and the Bank an Illinois corporation. On January 30, 1964, Ivan Ezrine, chairman of United's board of directors, and Melvin S. Rosen, United's secretary, met with officials of the Lawndale Bank. At that meeting the Bank agreed to loan United $150,000 and received a note executed by the two officers in the name of United. It was agreed that the loan would be secured by 51,000 shares of the common stock of Oak Lawn Investments, Inc. and 54,000 permanent reserve shares of George Washington Savings and Loan Association of Chicago owned by United. At the same meeting Ezrine and Rosen executed a corporate resolution form which stated that the board of directors of United had adopted a resolution designating the Bank as a depository for corporate funds and authorizing the Bank to pay out funds upon checks drawn by Rosen or Ezrine. The $150,000 was then deposited in an account in United's name. Finally, at the January 30 meeting, Ezrine and Rosen signed a letter directing the Bank to pay $125,000 to the City Trust Company, Bridgeport, Connecticut, for credit to Glendale, Inc. On January 31, 1964, the Bank made the transfer as directed. On February 3, 1964, the Bank received an additional bank resolution form designating as additional signatories certain of United's officers in addition to Ezrine and Rosen. This resolution was signed

by Kenneth Livingston, United's vice-president and member of United's board of directors. Also forwarded to the Bank on this date were signature cards signed by all officers of United.

On February 4, 1964, a telegram was received which was signed by Melvin Rosen and which directed the Bank to transfer an additional $23,000 to Glendale. The Bank also made this transfer. On February 6 the agreed collateral for the loan was transferred by United to the Bank. The $150,000 loan was completely repaid by United in installments beginning May 14, 1964, and concluding February 20, 1965. United filed a Chapter 11 bankruptcy petition on May 20, 1965.

United alleges in Count I of its amended complaint that it made the payments to the Bank upon the note through a mistake in that at the time the payments were made United was not aware that it was relieved of its obligation to repay the note because the bank had transferred $148,000 of United's money to Glendale, Inc., at a time when the Bank was chargeable with knowledge that these transfers were unauthorized and were for the personal benefit of Ezrine and Rosen.

Count II alleges that the Bank was grossly negligent in that it transferred $148,000 of United's money to Glendale, Inc., when it knew or should have known that Ezrine and Rosen were not authorized to order the disbursements.

Count III is brought by direction of the creditors committee of United's bankrupt estate to set aside as fraudulent and recover the amount of the debits made by the Bank against United's accounts for the disbursements to the credit of Glendale, Inc.

Count IV is to recover for the estate the payments made by United on the note on the ground that there was no consideration for the payments which were made on a "non-existing debt" of United.

■ The test of the district court's judgment of dismissal of the four counts is whether the allegations in United's pleadings, construed in the light most favorably to United, can reasonably be said to warrant recovery on any theory of law. Jung et al. v. K & D Mining Co., 7 Cir., 260 F.2d 607, 608.

The basic issue upon which the validity of the district court's action in dismissing the complaint in this case turns is whether the facts pleaded could under any construction support a conclusion that the Bank was negligent in a manner which proximately caused injury to United.

United alleges in Count II to support its allegation that the Bank was grossly negligent in making the transfers that (a) the purported authority was based on the January 30 resolution the Bank should have known could not have been adopted by the directors, (b) the purported resolution authorized only the use of checks, and (c) the transfers were not appropriate to the "ostensible purpose of the loan" which was working capital for United.

■ We think that the facts alleged show as a matter of law that any alleged negligence on the part of the Bank was not the cause of the alleged injury to United. It is true that Ezrine and Rosen had actually not been authorized by United to order the funds transferred to Glendale, Inc., but had been authorized to execute the promissory note and to borrow $150,000 from the Bank. And Glendale, Inc. had no business relationship with United but was wholly owned by Ezrine, Rosen, and Ezrine's wife. The facts reveal that in making the loan and transfer from the United account on January 30, the Bank relied solely upon representations of Ezrine and Rosen that they were, respectively, chairman and secretary of United, with authority to act for United. But even if the Bank acted imprudently in not requiring greater proof of authority, the February 3 resolution, the transfer of the collateral to the Bank, the signature cards and the unquestioning repayments of the loan over a period of nearly a year demonstrate that United's alleged injury was not due to the imprudence.

Had the Bank made further inquiry into the authority of Ezrine and Rosen to act for United in obtaining a loan, in depositing the proceeds of the loan in the Bank, and in drawing upon the account, the complaint shows, the authority of Ezrine and Rosen would have been confirmed.

Count II alleges that the Bank should have known of Ezrine and Rosen's lack of authority to make the particular transfers in question. The facts alleged in the complaint show that the Bank had no knowledge which would lead them to suspect that the transfer of funds to Glendale was not for business purposes. Maley v. East Side Bank of Chicago, 7 Cir., 361 F.2d 393, is not in point. The Bank in *Maley* paid checks in clear violation of a corporate resolution and under suspicious circumstances that ought to have put the Bank on notice.

We see no merit in the claim that the Bank was negligent in transferring United's funds to Glendale pursuant to a letter and telegram rather than pursuant to a "check" as required by the Bank resolution. The signed letter and telegram satisfy the requirements for a check in the Uniform Commercial Code. Ill.Rev.Stat. Ch. 26 Sec. 3–104(2)(b). Moreover, it cannot be said that the Bank's failure to insist on a formal check caused any loss to United. It is clear that had the Bank requested a formal check Ezrine and Rosen would have supplied it.

United asserted in Count I the theory that it made a mistake of fact in repaying the loan since the Bank was not entitled to the funds because of its negligence in failing to protect United against loss through checks drawn for personal instead of corporate purposes. This theory falls with our conclusion that United was not injured as a proximate result of any alleged negligence of the Bank. In Willens v. City of Northlake, 19 Ill.App.2d 316, 152 N.E.2d 486, plaintiff allegedly paid money on the mistaken notion an ordinance required the payment when in fact there was no such ordinance. Here there is no mistake about the fact

of the loan and that United had the obligation to repay.

Because we have found that the Bank, as United's agent, properly made the transfers to Glendale, Inc., it follows that the Bank did not appropriate United's funds. Accordingly, we see no merit in United's claim that the Bank's debiting United's accounts for the amounts transferred constituted a preferential transfer to the Bank under 11 U.S.C. Sec. 107(d) (2). Nor are we persuaded that United's payment of the loan was a preferential payment since the payment was upon a legal antecedent debt and therefore for fair consideration. 11 U.S.C. § 107(d).

We hold that the district court did not err in concluding that none of the four counts stated a claim upon which relief could be granted.

Affirmed.