**Julie SCOMA and Richard Scoma,
Plaintiffs,**

**v.**

**The CHICAGO BOARD OF EDUCA-
TION et al., Defendants.**

**No. 74 C 1377.**

United States District Court,
N. D. Illinois, E. D.

Nov. 13, 1974.

Lawrence Schlam, Clark & Schlam, Chicago, Ill., for plaintiffs.

Michael J. Murray, John J. Dillon and Stanley A. Strzelecki, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

Plaintiffs, parents residing in the City of Chicago, have filed a civil rights action under 42 U.S.C. § 1983, seeking a preliminary and permanent injunction and declaratory judgment against defendants from interfering with plaintiffs' decision to educate their two school-age children [1] at home, by the enforcement of the state compulsory attendance statute.[2] Defendants are the Chicago Board of Education, the Superintendent of Schools for the Chicago Board of Education, the Administrator of the Division of School Attendance for the Chicago Board of Education, the Director of Pupil Attendance for the Chicago Board of Education, the Acting District Superintendent for School District Three of the Chicago Board of Education, the Principal of the Ravenswood Elementary School, and the Truant Officer of the Ravenswood School.

In their five-count complaint, plaintiffs assert that they have withdrawn their children from the Ravenswood Elementary School in order to educate them privately at home under a plan which they believe is adequate to ensure that the children receive the minimum requisite educational skills and values, and which they believe qualifies their home instruction as a "private school" under

---

1. Lizabeth and Nicole Scoma, ages 7 and 5, respectively (at the time this lawsuit was filed).

2. Ill.Rev.Stat. ch. 122, §§ 26–1 through 26–11. As the Court of Appeals for this circuit has noted, this statute is directed not at children, but at parents and guardians. Betts v. Board of Education of City of Chicago, 466 F.2d 629, 635 (7th Cir. 1972).

the Illinois Compulsory Attendance Act, Ill.Rev.Stat. ch. 122, § 26–1. That statute exempts from compulsory attendance at a public school:

"(1) Any child attending a private or a parochial school where children are taught the branches of education taught to children of corresponding age and grade in the public schools, and where the instruction of the child in the branches of education is in the English language;"

As interpreted by the Illinois Supreme Court in People v. Levisen, 404 Ill. 574, 578, 90 N.E.2d 213, 215 (1950), the term "private school" can include private home instruction if the child receives "a type of instruction and discipline having the required quality and character." This home instruction, said the court, must be "at least commensurate with the standards prescribed for the public schools."

In preparation for the withdrawal of their children from the public school, the plaintiffs began contacting defendants in an attempt to secure approval for their proposed plan as early as December, 1973. At that time, they were told by the Administrator of School Attendance and the School Board's attorney that there were no established procedures for prior approval of a home instruction plan, and that parents who withdraw their children from public school will be prosecuted under the Illinois statute. Three months later, plaintiffs, through their attorney, wrote to the Administrator of School Attendance seeking a form of "declaratory judgment" that their proposed plan "meets minimal permissable [sic] educational standards", and that "criminal prosecution will not be forthcoming". They also sought a statement outlining the nature and criteria of the standards to be used in evaluating their plan, and the current procedures for ensuring compliance with the statute. The Administrator responded that he had no authority to render such a "declaratory judgment", that only the school Principal and the District Superintendent had the authority to initiate criminal prosecution, and the plaintiffs would hear from them "forthwith".

On April 19, 1974, plaintiffs transferred their children from the public school to home instruction and informed defendant Principal of their plan. On May 3, 1974, and again on May 17, 1974, plaintiffs received a telephone call from defendant Truant Officer who, on the latter occasion, "threatened to officially seize and remove [the] children from their home, and demanded that the children return to Ravenswood School on or before May 20, 1974. On May 21, 1974, plaintiffs filed this complaint.

Count I alleges that as a result of their actions, defendants deprived plaintiffs of their rights, privileges and immunities guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution, and Article I, § 12 of the Illinois Constitution, S.H.A.

In Count II, plaintiffs allege that the Illinois Compulsory Attendance Act, Ill. Rev.Stat. ch. 122, §§ 26–1 to 26–11, is unconstitutional as applied to plaintiffs by defendants in that it deprives them of substantive due process and equal protection of the laws in violation of the Fourteenth Amendment, and in that it is vague and uncertain as applied to them. In Count III, plaintiffs claim that the Illinois Compulsory Attendance Act is unconstitutional on its face in violation of the Fifth and Fourteenth Amendments, by its use of "public schools" as the statutory standard for an adequate private school.

Count IV invokes 42 U.S.C. § 1985(3) in alleging that defendants conspired to deny plaintiffs their constitutional rights. In Count V, plaintiffs allege that defendants, knowing that the wrongs conspired to be done were about to be committed, neglected or refused to prevent such wrong, in violation of 42 U.S.C. § 1986.

Plaintiffs have moved this court to convene a three-judge court, pursuant to 28 U.S.C. § 2281 and § 2284. Plaintiffs

seek a preliminary and permanent injunction restraining defendants from enforcing the Illinois Compulsory School Attendance Act; the Illinois Truancy Statute, Ill.Rev.Stat. ch. 37, § 702–3(b); and the Illinois statute prohibiting adults from contributing to the delinquency of minors, Ill.Rev.Stat. ch. 23, §§ 2360, 2361 and 2361a; in such a way as to prevent plaintiffs from conducting a private school for their children in their home, and from requiring plaintiffs' children to attend a state approved and licensed school. The plaintiffs also seek a declaratory judgment that the Illinois Compulsory Attendance Act is unconstitutional, both on its face and as applied. Defendants have moved this court to dismiss the complaint, deny the motion for a three-judge court, and deny the motion for a preliminary injunction.

### I. Motion to Dismiss

#### A. Lack of Jurisdiction

Defendants assert that this court lacks jurisdiction over the subject matter of the complaint, and move to dismiss pursuant to F.R.Civ.P. 12(b)(1). Plaintiffs have invoked federal jurisdiction under the provisions of 28 U.S.C. §§ 1331, 1343(3), 2201, 2202; and 42 U.S.C. §§ 1983, 1985(3) and 1986.

#### 1. Jurisdiction under 28 U.S.C. § 1343(3)

Plaintiffs have alleged violations of 42 U.S.C. §§ 1983, 1985(3) and 1986, and thereby assert jurisdiction under 28 U.S.C. § 1343(3) which confers jurisdiction upon a federal district court for an action to redress the deprivation of civil rights "secured by . . . any Act of Congress." Defendants assert that neither the Board of Education nor any of its employees or agents is a "person" within the meaning of 42 U.S.C. § 1983, and therefore not subject to the jurisdiction of 28 U.S.C. § 1343.

 The Board of Education of the City of Chicago is a "municipal corpora-

tion". Norfolk and Western Ry. Co. v. Board of Education, of the City of Chicago, 114 F.2d 859 (7th Cir. 1940); Ill. Rev.Stat. ch. 122, § 34–2. Such municipal corporations have been held to be outside the ambit of § 1983 both in actions for damages as well as those seeking equitable relief. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Plaintiffs' reliance on Aurora Education Association v. Board of Education of Aurora Public School District No. 131, 490 F.2d 431 (7th Cir. 1973), cert. denied, 416 U.S. 985, 94 S.Ct. 2388, 40 L.Ed.2d 762 (1974); Lee v. Board of Regents, 441 F.2d 1257 (7th Cir. 1971); and Harkless v. Sweeney Independent School District, 427 F.2d 319 (5th Cir. 1970) cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); is misplaced. In Lee, the court had relied on two earlier Seventh Circuit cases [3] in holding that a municipal corporation, board of education, although not liable for damages, is liable for declaratory and injunctive relief under § 1983. In Harkless, the Fifth Circuit limited the Supreme Court's holding in Monroe v. Pape, *supra,* to exempting municipal corporations from liability only for money damages under § 1983, and held a school district subject to equitable relief. The precise line of reasoning running through both Lee and Harkless was specifically rejected by the Supreme Court in City of Kenosha, *supra,* 412 U.S. at 512–13, 93 S.Ct. 2222. As for Aurora, *supra,* 490 F.2d at 434, the court made a specific finding that the Board of Education of Aurora Public School District No. 131 of Kane County was not a municipal corporation; such is not the case for the Board of Education of the City of Chicago. See also, Bravo v. Board of Education of the City of Chicago, No. 72 C 970 (N.D.Ill., July 31, 1974). Accordingly, this court finds that the Board of Education is not a "person" within the meaning of § 1983,

---

3. Schnell v. City of Chicago, 407 F.2d 1084 (1969); and Adams v. City of Park Ridge, 293 F.2d 535 (1961).

and is therefore not subject to federal jurisdiction under 28 U.S.C. § 1343.

▮ Defendant employees of the Board of Education,[4] however, can claim no such exemption. In every case cited by defendants to support the proposition that the doctrine of *respondeat superior* is not allowable under § 1983,[5] the plaintiffs had sought to recover money damages; in no case did a court hold that such individuals were not subject to equitable relief. As plaintiffs indicate, there have been many cases since *City of Kenosha* in which defendant municipal officers or employees were held subject to injunctive or declaratory relief.[6] Defendants additionally argue that defendant employees retain a qualified immunity under § 1983 for acts done in good faith, under Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In that case, however, the Supreme Court conferred an immunity only from liability for damages; there was no indication whatsoever that such employees would be immune from equitable relief. Accordingly, this court finds that the defendant employees of the Board of Education are "persons" within the meaning of § 1983, and are therefore subject to federal jurisdiction under 28 U.S.C. § 1343. It is therefore unnecessary to consider defendants' jurisdictional claims with regard to §§ 1985(3) and 1986, except to find that defendant Board of Education is not a "person" within the meaning of either of those sections. See Potts v. Wright, 357 F.Supp. 215 (E.D.Pa.1973).

*2. Jurisdiction under 28 U.S.C. § 1331*[7]

▮ A federal district court has jurisdiction of "federal questions" under § 1331, only where the $10,000 jurisdictional amount requirement is met. Since plaintiffs seek an injunction and declaratory judgment only, and have omitted a prayer for monetary damages, the question remains whether plaintiffs' alleged deprivation of constitutional rights is, as plaintiffs allege, capable of valuation in excess of $10,000. In injunction actions, the amount in controversy is not the amount which plaintiff might recover at law, but the value of the right to be protected or the extent of the injury to be prevented. 1 Barron & Holtzoff, Federal Practice and Procedure, § 24, at 111 (Wright's ed. 1960). See Hedberg v. State Farm Mutual, 350 F.2d 924, 928 (8th Cir. 1965); and Weiss v. Sunasco Inc., 316 F.Supp. 1197, 1204 (E.D.Pa.1970). This court must therefore estimate the present probability that the value of the rights asserted here will exceed the jurisdictional amount. Although it is dificult to determine the pecuniary value of those rights,[8] the interests claimed by plaintiffs are capable of being translated into terms of money. This court cannot say as a legal certainty, *without first reaching the merits of the case*, that plaintiffs would be unable to justify the jurisdictional claims which they have pleaded. Spock v. David, 469 F.2d 1047 (3d Cir. 1972). Accordingly, defendants' motion to dismiss the complaint

---

4. James F. Redmond, Jack Oberhart, Louise Daugherty, John Bonnell, Bessie Laurence and Truant Officer Palmer.

5. Boyden v. Troken, 358 F.Supp. 906 (N.D. Ill.1973); Bennett v. Gravelle, 323 F.Supp. 203 (D.Md.), aff'd, 451 F.2d 1011 (4th Cir. 1971), cert. dismissed, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972); and Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969).

6. See, e. g., Amen v. City of Dearborn, 363 F.Supp. 1267 (E.D.Mich.1973); Smith v. City of East Cleveland, 363 F.Supp. 1131 (N.D.Ohio 1973); Dupree v. City of Chat-

tanooga, Tennessee, 362 F.Supp. 1136 (E.D. Tenn.1973); and Nyberg v. City of Virginia, 361 F.Supp. 932 (D.Minn.1973).

7. Since I have found jurisdiction over the defendant employees of the Board of Education under 28 U.S.C. § 1343, the jurisdictional question under § 1331 is moot as to them, and remains an issue only for defendant Board of Education of the City of Chicago.

8. Plaintiffs assert rights guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution.

for lack of jurisdiction under 28 U.S.C. § 1331 is hereby denied.

### B. Failure to State a Claim

■ Defendants have moved this court to dismiss the complaint for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6). In this Circuit, the test of such a dismissal is whether the allegations in plaintiffs' pleadings, construed in the light most favorable to plaintiffs, can reasonably be said to warrant relief on any theory of law. United Milk Products Co. v. Lawndale National Bank of Chicago, 392 F.2d 876 (7th Cir. 1968). For the reasons which follow, this court has concluded that the allegations of plaintiffs' complaint are not sufficient to warrant the injunctive or declaratory relief sought.

■ Preliminarily it must be noted that there is currently no state prosecution pending against plaintiffs. Plaintiffs have alleged, however, that they have been threatened with prosecution under the challenged statutes by defendant Truant Officer Palmer. Assuming this allegation to be true for the purposes of this motion,[9] plaintiffs have satisfied the requirement of ripeness of their claim. Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). Nonetheless, to warrant injunctive relief, plaintiffs must show that they are in jeopardy of suffering irreparable injury if the State is left free to prosecute them under the statutes in question.[10] It has further been suggested that in

such a case, plaintiffs must also show bad faith and harassment on the part of State officials.[11] Such a showing, while perhaps appropriate, has not yet been held to be a prerequisite to the granting of injunctive relief. Allee v. Medrano, 416 U.S. 802, 820 n. 15, 94 S.Ct. 2191, 2203 n. 15, 40 L.Ed.2d 566 (1974).

■ Plaintiffs have failed to meet the traditional requirement for injunctive relief of a showing of irreparable injury. Such injury is generally measured by the "chilling effect" suffered by a plaintiff who is intimidated by an allegedly unconstitutional statute and who chooses not to violate it as a means of testing its validity. But plaintiffs here have admittedly withdrawn their children from the public school system. The validity of the statute, both on its face and as applied to plaintiffs, has yet to be tested in the courts, but plaintiffs certainly were not chilled to the degree that they became frozen into inaction. They allege that, in the eyes of defendants, they have violated the statute in question, and that the local authorities intend to prosecute them for their past acts. Thus plaintiffs have a clear and readily available opportunity to test the constitutionality of the statute without violating it any further.[12]

■ It has been suggested that a single judge may not dismiss an action otherwise within the three-judge requirement solely because he finds no threat of irreparable injury.[13] He must

---

9. Ricci v. Chicago Mercantile Exchange, 447 F.2d 713, 715 (7th Cir. 1971), aff'd, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973) ; 2A Moore's Federal Practice ¶ 12.-08, at 2266–67 (1974).

10. Boyle v. Landry, supra, 401 U.S. at 80–81, 91 S.Ct. 758; Dombrowski v. Pfister, 380 U.S. 479, 88 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

11. Note, 48 N.Y.U.L.Rev. 965 (1973). This would expand the holdings of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971),

to include situations of threatened state criminal prosecutions.

12. In Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926), the Court refused to issue injunctive relief, finding no irreparable injury where the statute had already been violated.

13. D. Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 25–26 (1964). See also Stratton v. St. Louis S. W. Ry., 282 U.S. 10, 13, 18, 51 S.Ct. 8, 75 L.Ed. 135 (1930). Cf. Hunt v. Rodriguez, 462 F.2d 659, 662 (5th Cir. 1972).

additionally find that the constitutional claim raised by plaintiff is insubstantial. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). Moreover, plaintiffs seek a declaratory judgment that: (a) the Illinois Compulsory Attendance Act, Ill.Rev.Stat. ch. 122, §§ 26–1 to 26–11, is unconstitutional on its face; (b) the Act is unconstitutional as applied to plaintiffs; and (c) defendants' manner of enforcement creates an unconstitutional burden of proof and a presumption of guilt upon plaintiffs. Declaratory relief requires no showing of irreparable injury. /Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L. Ed.2d 505 (1974); Perez v. Ledesma, 401 U.S. 82, 111–130, 91 S.Ct. 674, 27 L.Ed. 2d 701 (1971), (Brennan, J., concurring). Therefore, this court must consider the merits of plaintiffs' constitutional claims to determine whether such claims are substantial, and whether declaratory relief is appropriate.

█ In People v. Levisen, 404 Ill. 574, 90 N.E.2d 213 (1950), the Illinois Supreme Court construed the Illinois Compulsory Attendance Act to include as a "private school" the type of home education that plaintiffs here allege they provide for their children. The court never reached the contention that the statute violates the constitutional right of parents to direct the education of their children.[14] Plaintiffs in this case, however, go beyond *Levisen* and make that very challenge. They assert in Count I of their complaint new and wide-ranging "fundamental" constitutional rights which include:

> "[the] right and duty to educate their children adequately but as they see fit; to rear their children in accordance with their determination of what best serves the family's interest and welfare; to be protected in their family privacy and personal decision-making from governmental intrusion; to distribute and receive information;

and to teach and to ensure their children's freedom of thought and inquiry."

Plaintiffs seek authority for this proposition from dicta in Griswold v. Connecticut, 381 U.S. 479, 482, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), where in another context the court reaffirmed the prior case of Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). In *Pierce*, the court held only that the *property* rights of a *private school* had been unconstitutionally abridged by a state compulsory school attendance statute which did not exempt students who attended private schools. The "right" is thus a limited one; it merely provides parents with an opportunity to seek a reasonable alternative to public education for their children.[15] As Mr. Justice White observed in his concurring opinion in Wisconsin v. Yoder, 406 U.S. 205, 239, 92 S.Ct. 1526, 1545, 32 L.Ed.2d 15 (1972):

> "[*Pierce*] lends no support to the contention that parents may replace state educational requirements with their own idiosyncratic views of what knowledge a child needs to be a productive and happy member of society; in *Pierce*, both the parochial and military schools were in compliance with all the educational standards that the State had set, and the Court held simply that while a State may posit such standards, it may not pre-empt the educational process by requiring children to attend public schools."

In *Yoder*, the Court was concerned with the right of parents to "direct the *religious* upbringing of their children." (At 233, 92 S.Ct. at 1542, emphasis added.) The recognized fundamental right was thus the "free exercise of religion" guaranteed by the First Amendment. Plaintiffs there were Amish parents who challenged the constitutionality of a state statute which required their children to attend school beyond the eighth

---

14. See generally Comment, 18 U.Chi.L.Rev. 105 (1950).

15. See also Norwood v. Harrison, 413 U.S. 455, 461, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973).

grade, until reaching the age of 16. The court found that preservation of the traditional way of life of the Amish was central to their deepest religious convictions. In *Yoder* the Court also found that compulsory secondary education in a modern school was in sharp conflict with the inculcation of that religious belief. In carefully considering the Amish beliefs, the court noted:

"[T]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses." (At 215–16, 92 S. Ct. at 1533.)

The Court further observed: "*Pierce*, of course, recognized that where nothing more than the *general interest of the parent in the nurture and education of his children* is involved, it is beyond dispute that the State acts 'reasonably' and constitutionally in requiring education to age 16 in some public or private school meeting the standards prescribed by the State." (At 233, 92 S.Ct. at 1542, emphasis added.)

There is no such claim of religious belief here. The plaintiffs' asserted right to educate their children "as they see fit" and "in accordance with their determination of what best serves the family's interest and welfare" does not rise above a personal or philosophical choice and cannot claim to be within the bounds of Constitutional protection.

Aside from claims based on the exercise of religion clause, compulsory attendance statutes have generally been regarded as valid. 79 C.J.S. Schools and School Districts § 463b. The courts have held that the state may constitutionally require that all children attend some school, under the authority of its police power.[16] Plaintiffs have established no fundamental right which has been abridged by the compulsory attendance statute.[17] Thus the state need not demonstrate a "compelling interest"; it must act only "reasonably" in requiring children to attend school. Under the test of *Pierce* and *Yoder*, the Illinois statute as interpreted in *Levisen* is reasonable and constitutional.

In Count II, plaintiffs claim that the statute deprives them of equal protection of the laws in violation of the Fourteenth Amendment as applied to them, in that defendants distinguish between parents who educate their children in either a public or institutional private school, and those who, like plaintiffs, educate their children privately at home. It is true that defendants administratively presume that parents who educate their children at home are in violation of the statute. Plaintiffs do not assert, however, that this distinction operates to the peculiar disadvantage of any suspect class. Moreover, it should be clear, for the reasons stated above and in accord with the recent Supreme Court decision in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 29–39, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), that the defendants' actions do not interfere with the exercise of any

16. See Pierce v. Society of Sisters, 268 U.S. 510, 534, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 402, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); People v. Turner, 121 Cal.App.2d Supp. 861, 263 P. 2d 685 (1953), appeal dismissed, 347 U.S. 972, 74 S.Ct. 785, 98 L.Ed. 1112 (1954); State v. Hoyt, 84 N.H. 38, 146 A. 170 (1929); Stephens v. Bongart, 15 N.J.Misc. 80, 189 A. 131 (1937); Commonwealth v. Bey, 166 Pa.Super. 136, 70 A.2d 693 (1950); State v. Williams, 56 S.D. 370, 228 N.W. 470 (1929).

17. *Cf.* Mattis v. Schnarr, 502 F.2d 588, 595, (8th Cir. Aug. 23, 1974).

"fundamental" right. In *Rodriguez*, the court held that education is not a constitutionally protected fundamental right, the impingement of which would necessitate subjecting the State's action to strict judicial scrutiny. This court need therefore apply only the traditional standard of review, which "requires only that the State's system be shown to bear some rational relationship to legitimate state purposes." 411 U.S. at 40, 93 S. Ct. at 1300. It is clear that the State is empowered to reasonably "regulate all schools, to inspect, supervise and examine them, their teachers and pupils." *Pierce v. Society of Sisters*, 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). The distinction in treatment by the State between parents who send their children to institutional schools and those who educate them at home directly relates to the difficulty that the State would surely face in supervising, at considerable expense, a host of facilities and individuals, widely scattered, who might undertake to instruct their children at home; as compared with the less difficult and expensive supervision of teachers and facilities in organized public and private schools. moreover, the legislature might have concluded that institutional private schools are under the direct supervision of their school authorities at all times, and their students would thus presumptively qualify for the statutory exemption. *People v. Turner*, 121 Cal.App.2d Supp. 861, 263 P.2d 685 (1953), appeal dismissed, 347 U.S. 972, 74 S.Ct. 785, 98 L.Ed. 1112 (1954); *State v. Hoyt*, 84 N.H. 38, 146 A. 170 (1929).

Plaintiffs further assert that defendants' manner of enforcing the statute creates a burden of proof and presumption of guilt upon plaintiffs in violation of their right to due process of law under the Fourteenth Amendment. We might first note that the presumption of innocence in a criminal trial is not predicated upon any express provision of the Constitution, but upon ancient concepts antedating the development of the common law. See *Coffin v.*

*United States*, 156 U.S. 432, 453–60, 15 S.Ct. 394, 39 L.Ed. 481 (1895). Further, the presumption of innocence is but the reverse side of the talisman which imposes upon a prosecutor the burden of proof. See Thayer, *A Preliminary Treatise on Evidence at Common Law*, Appendix B, The Presumption of Innocence in Criminal Cases, 551–76 (1898). The clear rule of law, however, is that the burden of proof shifts upon the criminal defendant "when a criminal statute sets forth an exception, which exception is not a part of the crime, but operates to prevent an act otherwise included in the statute from being a crime." *United States v. Holmes*, 187 F.2d 222, 225 (7th Cir.), cert. denied, 341 U.S. 948, 71 S.Ct. 1015, 95 L.Ed. 1372 (1951).

In this case, Ill.Rev.Stat. ch. 122, § 26–1(1) creates an exception to the requirement of compulsory attendance at a public school, which prevents attendance at a private school from being a crime. Thus, as the Illinois Supreme Court dictated in *Levisen*, the burden of proof that a plan of home instruction qualifies as a private school must rest with the parents who have withdrawn their children from the public schools.

Finally, in Count III plaintiffs claim that the statute is unconstitutionally vague on its face in its use of the phrase "public schools" as a criterion for adequacy of authorized private education. It is true that a basic principle of due process is a requirement that statutory prohibitions must be clearly defined and that no person can "be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). However, "we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972). The vagueness doctrine is rooted in the notion that a potential violator of a statute

must be given fair warning.[18] As the Supreme Court observed, however, in Colten v. Kentucky, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972);

"It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

The plain meaning of the phrase "public schools", as the requisite standard of education, should cause no difficulty for citizens who desire to obey the statute. The statute exempts from compulsory attendance any child attending a private school where he is taught "the branches of education taught to children of corresponding age and grade in the *public schools*." (Emphasis added.) The statutory duty imposed by this section was explained by the court in *Levisen, supra*, 404 Ill. at 578, 90 N.E.2d at 216:

"No parent can be said to have a right to deprive his child of educational advantages at least commensurate with the standards prescribed for the public schools, and any failure to provide such benefits is a matter of great concern to the courts."

Such a standard, as explained by the highest state court, cannot be constitutionally void on its face on grounds of vagueness.

## II. *Motion for a Three-Judge Court*

■ Plaintiffs, having failed to raise any substantial constitutional question, are not entitled to a three-judge court. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

## *Conclusion*

■ Plaintiffs have failed to set forth any facts upon which either in-

junctive or declaratory judgment relief can be granted. Accordingly, defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted is hereby granted and the cause dismissed.

---

18. See, *e. g.*, Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).