Lowell HANSON and Carol
Hanson, Plaintiffs,

v.

Gerald CUSHMAN, Chris P. Christensen, Burl Glendenning, William J. Sieter, Eugene Paslov and Patrick M. Coady, Individually and in their official capacity, Defendants.

No. G 79–645 CA1.

United States District Court,
W. D. Michigan, S. D.

March 24, 1980.

**110**

Kenneth A. Birch, Birch, Dean & Hluchaniuk, East Lansing, Mich., for plaintiffs.

Robert M. Thrun, Thrun, Maatsch & Nordberg, Lansing, Mich., for defendants Glendenning, Christensen, Cushman and Sieter.

James E. Riley, Asst. Atty. Gen., Lansing, Mich., for defendants Paslov and Coady.

## OPINION AND ORDER

BENJAMIN F. GIBSON, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983 alleging the deprivation under color of state law of rights secured by the Constitution of the United States. Plaintiffs, Lowell and Carol Hanson, seek a declaratory judgment declaring the Michigan Compulsory Attendance Law, Mich. Comp.Laws § 380.1561,[1] unconstitutional as applied, "in that it denies parents the right to educate their children in their own home where the parents can give the children superior or comparable education as the public schools." *Plaintiffs' Complaint ¶ 22.* Jurisdiction is based on 28 U.S.C. § 1343(3). The defendants have filed motions to dismiss and defendants Cushman, Christensen,

Glendenning and Sieter have also moved in the alternative for summary judgment.

■ With regard to the motions to dismiss, the Court's inquiry is merely whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief. In making this determination, the allegations in the pleading are taken at "face value," *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "[W]ell pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1182 (6th Cir. 1975). All reasonable inferences that might be drawn from the pleading must be indulged. *Fitzke v. Shappell,* 468 F.2d 1072, 1076 n. 6 (6th Cir. 1972).

The facts, viewed in light of the foregoing discussion, are these. The Hansons are the parents of four children between six and sixteen years of age, and legal guardians of a fifth child, age thirteen. Another adult, Charlotte O'Brien, is living in the Hansons' home. Defendants Glendenning and Cushman are respectively the Superintendent and Assistant Superintendent of the Greenville School District, where four of the Hansons had previously attended school. Defendants Sieter and Christensen are or were[2] respectively the Supervisor and the Attendance Officer for the Montcalm Intermediate School District. Defend-

---

1. Sec. 1561. (1) Except as provided in subsections (2) and (3), every parent, guardian, or other person in this state having control and charge of a child from the age of 6 to the child's sixteenth birthday, shall send that child to the public schools during the entire school year. The child's attendance shall be continuous and consecutive for the school year fixed by the school district in which the child is enrolled. . . .

⋅ ⋅ ⋅ ⋅ ⋅

(3) A child shall not be required to attend the public schools in the following cases:
(a) A child who is attending regularly and is being taught in a state approved nonpublic

school, which teaches subjects comparable to those taught in the public schools to children of corresponding age and grade, as determined by the course of study for the public schools of the district within which the nonpublic school is located.
Mich.Comp.Laws § 380.1561.

2. In the Answer of defendants Cushman, Glendenning, Christensen, and Sieter, at ¶ 4, it is alleged that defendant Christensen has recently left the employ of the Montcalm Intermediate School District.

ant Paslov is the Interim Superintendent of Public Instruction for the State of Michigan. Defendant Coady is a Michigan State Police Officer who was requested to investigate the Hanson home by the Greenville School District.

During August of 1979 the Hansons and Ms. O'Brien decided to teach the above-mentioned children in the Hanson home. In pursuit of that objective the children were enrolled in the home study program of Clonlara School in Ann Arbor, Michigan, from September 4 to September 21, 1979. On or about September 21, defendant Christensen went to the Hanson home to determine why the children were not in Greenville School District schools. He was informed that the children had been enrolled in Clonlara. Christensen returned a day or so later to inform the plaintiffs that the children should be in school or the plaintiffs would be put in jail. On or about September 26, 1979 Christensen delivered a letter threatening court action against the plaintiffs if the children were not in school on the following day.

During the week of September 26, 1979, defendant Cushman visited the Hanson home and informed Carol Hanson that the plaintiffs were not permitted to enroll their children in a private school for the purpose of allowing home study. During the first week of October, 1979, Carol Hanson contacted officials of the State Board of Education several times and was informed that there must be a certified teacher in their home in order for them to teach their children at home.

On October 8, 1979, plaintiffs informed the state officials that they, along with Charlotte O'Brien and Pat Montgomery, Director of Clonlara School, were beginning a home study program which, they allege, "would provide their children with a comparable or better education than the public schools," and requested approval of their program, or an administrative review of it. Mrs. Hanson was informed that the State would recommend legal action against her by the local boards.

On October 9, 1979, Mrs. Hanson asked of defendant Cushman that plaintiffs be allowed to purchase textbooks that the Greenville School District was using so that her children would be able to study the same texts as other children in the area. Her request was turned down and she was again informed that she was subject to arrest if the children were not returned to public school. On the same day plaintiffs received a letter from defendant Sieter stating that the continued absence of the children from the Greenville public schools would result in a court action against them "for refusal or neglect to send your children to school."

By letter dated October 23, 1979, plaintiffs' counsel informed defendant Sieter that plaintiffs intended to provide their children with a comparable or superior education to that provided by the public schools; that they intended to do this in their own home; that they had set up a course of study using prepared courses, texts, readings, and other types of work; and that "the Hansons fully intend to comply with all reasonable regulations for their school and are willing to adopt any type of reasonable and/or legal requirements in the education given to their children."

On November 6, 1979, defendant Coady filed a petition in the Montcalm County Juvenile Court alleging that the plaintiffs had neglected their children by failing to provide adequate education for their minor children. According to representations of counsel to this Court at its hearing of January 28, 1980, the result of the Montcalm County Juvenile Court proceeding was that the Hansons have agreed to hire a certified teacher to tutor their children in their home pending the outcome of this Court's proceedings.

According to their complaint plaintiffs "have embarked on a home study program designed to teach their children fundamental education that is comparable or superior to the education given at the Greenville Schools." *Plaintiffs' Complaint ¶ 19.*

This Court need not decide whether parents have a right to educate their children

at home, the state concedes that parents have that right so long as state laws are complied with. Rather the issue is the much narrower one of whether parents have the right to educate their children at home without complying with a state law requiring state certification of all persons who give instruction to children within the state.

■ Plaintiffs claim that the parental right to control the education that their children receive is protected by the penumbra of the first nine amendments and the Fourteenth Amendment to the United States Constitution. The case stands or falls on their argument that this claimed right rises to the level of a "fundamental" constitutional right. This argument is crucial because where governmental regulation impinges upon a fundamental constitutional right, the normal presumption of constitutionality accorded to governmental action is inverted. Instead of asking the usual question whether the regulation has any conceivable rational basis, the Court will insist that the governmental action be justified as necessary to achieve an interest of the state that is compelling.

Plaintiffs have cited no cases to the Court that have held that parents have a fundamental constitutional right to educate their children at home, nor has the Court's own research uncovered any. Rather, plaintiffs seek to establish this right through reliance upon dicta from several United States Supreme Court decisions.

Plaintiffs first quote at length from *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) as follows:

While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of

his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect. Determination by the Legislature of what constitutes proper exercise of police power is not final or conclusive but is subject to supervision by the courts. [Citations omitted]

*Id.* at 399–400, 43 S.Ct. at 626–627. The case struck down a state law prohibiting the teaching of foreign languages to children before they had reached the eighth grade, primarily because of the due process rights of the teacher, but also in part because it interfered with "the power of parents to control the education of their own." *Id.* at 401, 43 S.Ct. at 627. But this rationale must be read with the statements in the preceding paragraph of the opinion where the Court said:

Practically, education of the young is only possible in schools *conducted by especially qualified persons* who devote themselves thereto. The calling always has been regarded as useful and honorable, essential, indeed, to the public welfare. . . . [Plaintiff's] right thus to teach and the right of parents *to engage him* so to instruct their children, we think, are within the liberty of the amendment.

*Id.* at 400, 43 S.Ct. at 627 (emphasis added). The case also went on to say that, "[t]he power of the state to compel attendance at some school and to make reasonable regulations for all schools, including a requirement that they shall give instructions in English, is not questioned." *Id.* at 402, 43 S.Ct. at 628.

Plaintiffs also rely on *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), where the Oregon Compulsory Education Act, which required attendance at *public* schools, was declared unconstitutional. In *Pierce*, the Court held that the

property rights of a private school had been unconstitutionally abridged because the statute did not exempt students who attended private school. The *Pierce* opinion, citing *Meyer*, also stated:

> [W]e think it entirely plain that the Act of 1922 unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control. As often heretofore pointed out, rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state. The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from *public* teachers only.

*Id.* at 534–35, 45 S.Ct. at 573 (emphasis added). Once again, though, it is important to understand the context in which this was said. The Court noted earlier in the opinion that

> [n]o question is raised concerning the power of the state reasonably to regulate all schools, to inspect, supervise and examine them, *their teachers* and pupils; *to require that all children of proper age attend some school*, that teachers shall be of good moral character and patriotic disposition, that certain studies plainly essential to good citizenship must be taught, and that nothing be taught which is manifestly inimical to the public welfare.

*Id.* at 534, 45 S.Ct. at 573 (emphasis added).

One commentator has discussed these cases as follows:

> Both cases, *Pierce* and *Meyer* are best understood when placed in historical perspective. At the time they were decided, they were consistent with the generally prevailing judicial skepticism regarding any government interference with the rights of citizens. *Pierce* and *Meyer* are both couched in the same substantive due process language which characterized the now discredited cases, such as *Lochner v. New York*, 198 U.S. 45 [25 S.Ct. 539, 49 L.Ed. 437] (1905), declaring state attempts to regulate the economy invalid.

S. Goldstein, *Law and Public Education, Cases and Materials* 36 (1974). And as Mr. Justice White noted in his concurring opinion in *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972):

> *Pierce v. Society of Sisters* [citation omitted], lends no support to the contention that parents may replace state education requirements with their own idiosyncratic views of what knowledge a child needs to be a productive and happy member of society; in *Pierce*, both the parochial and military schools were in compliance with all the educational standards that the State had set, and the Court held simply that while a State may posit such standards, it may not pre-empt the educational process by requiring children to attend public schools.

*Id.* at 239, 92 S.Ct. at 1545.

The *Yoder* case, also relied on by plaintiffs, was a challenge to Wisconsin's requirement of compulsory school attendance by children beyond the eighth grade until they reach the age of 16 brought by Old Order Amish and Mennonite people. The Court was concerned with the right of parents to "direct the *religious* upbringing of their children." 406 U.S. at 233, 92 S.Ct. at 1542 (emphasis added). *Yoder* therefore involved the right to the free exercise of religion, a clearly established fundamental constitutional right guaranteed by the First Amendment.

The Court held that the state's interests in compulsory education for children to age 16, while important, were not sufficiently supported *as applied to these established religious groups* to outweigh the First Amendment free exercise of religion right with which the "brief additional period of formal education" was found to interfere. The Amish showed that their way of life was inextricable from their religious beliefs, that compulsory schooling beyond the eighth grade would considerably interfere with their religious practices, and that their eight grades of education combined with continuing "informal vocational" training in agriculture through working on family farms met the state's interests in citizenship and preparation for society.

The court emphasized the central importance of the religion clauses in its decision:

> [T]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion clauses.

*Id.* at 215–16, 92 S.Ct. at 1533. There is no such claim of religious belief in this case.

In discussing *Pierce v. Society of Sisters, supra,* the Court said:

> *Pierce,* of course, recognized that where nothing more than the general interest of the parent in the nurture and education of his children is involved, it is beyond dispute that the State acts "reasonably" and constitutionally in requiring education to age 16 in some public or private school meeting the standards prescribed by the State.

*Id.* at 233, 92 S.Ct. at 1542.

The concurring opinion of Mr. Justice White with whom Mr. Justice Brennan and Mr. Justice Stewart joined, emphasized that the small increment of additional schooling there involved was, for him, decisive:

> This would be a very different case for me if respondents' claim were that their religion forbade [the] children from attending any school at any time and from complying in any way with the educational standards set by the State.

*Id.* at 238, 92 S.Ct. at 1544 (White, J., concurring).

■ The plaintiffs' claimed right to educate their children through a program of home study free from the requirement of compliance with state education laws involving teacher certification does not rise √ above a personal or philosophical choice, and therefore is not within the bounds of constitutional protection. *See Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Scoma v. Chicago Board of Education,* 391 F.Supp. 452 (N.D.Ill.1974). Plaintiffs have established no fundamental right that has been abridged by Michigan's compulsory attendance statute, Mich.Comp.Laws § 380.-1561,[3] or by its requirement of teacher certification, Mich.Comp.Laws § 388.553.[4] Thus the state need not demonstrate a "compelling interest" but only that it acted

---

3. *See* note 1, *supra.*

4. 388.553 No person shall teach or give instruction in any of the regular or elementary grade studies in any private, denominational or parochial school within this state who does not hold a certificate such as would qualify him or her to teach in like grades of the public schools of the state: Provided, however, That any person who shall have taught in any elementary school or schools of the standard specified in this act for a period of 10 years or more preceding the passage of this act, shall, upon filing proof of service with the superintendent of public instruction, be entitled to a certificate by said superintendent of public instruction in such form as he shall prescribe, to teach in any of the said schools within the state: Provided further, That teaching in such schools shall be equivalent to teaching in the public schools for all purposes in obtaining a certificate: Provided further, That the teachers affected by this act may take any examination as now provided by law and that the superintendent of public instruction may direct such other examinations at such time and place as he may see fit. In all such examinations 2 sets of questions shall be prepared in subjects ordinarily written on Saturday, 1 of which sets shall be available for use on Wednesday by applicants who observe Saturday as their Sabbath: Provided further, That any certificate issued under or by virtue of this act shall be valid in any county in this state for the purpose of teaching in the schools operated under this act: Provided further, That any person holding a certificate issued by the authorities of any recognized or accredited normal school, college or university of this or other state shall be entitled to certification as now provided by law: Provided, however, That

"reasonably" in requiring children to attend school and that children be taught only by certified teachers.

Although there is no allegation in the complaint, plaintiffs at oral argument raised the issue of equal protection as another challenge to the state's requirements. They argue that the position of the state treats those who wish to educate their children at home differently depending on whether or not they are certified teachers. Plaintiffs do not assert, nor does it appear, that this distinction has any adverse impact peculiar to members of a constitutionally protected suspect class, and, as discussed above, no "fundamental" right is involved. The Court, therefore, will apply the traditional standard of review which "requires only that the State's system be shown to bear some rational relationship to legitimate state purposes." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973).

The Supreme Court explicitly recognized that the state has a strong interest in education in several cases. In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Court said:

The State advances two primary arguments in support of its system of compulsory education. It notes, as Thomas Jefferson pointed out early in our history, that some degree of education is necessary to prepare citizens to participate effectively and intelligently in our open political system if we are to preserve freedom and independence. Further, education prepares individuals to be self-reliant and self-sufficient participants in society. We accept these propositions.

*Id.* at 221, 92 S.Ct. at 1536. In *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct.

686, 98 L.Ed. 873 (1954), the Court recognized that

"[t]oday, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment."

*Id.* at 493, 74 S.Ct. at 691, *quoted in Wisconsin v. Yoder*, 406 U.S. 205, 238, 92 S.Ct. 1526, 1544, 32 L.Ed.2d 15 (1972) (White, J., concurring).

The state advances its interest in insuring the minimum competence of those entrusted to teach as justification for requiring certification of teachers. The distinction in treatment by the state between parents whose children are taught by state certified teachers, whether in a public or private educational institution or at home, and those parents who seek to educate their children at home without certified teachers, directly relates to the difficulty that the state would surely face in examining and supervising, at considerable expense, a host of facilities and individuals, widely scattered, who might undertake to instruct their children at home without certification; as compared with the less difficult and expensive mechanism of requiring certification as a standard for competency. This clearly satisfies the state's burden of acting rationally and reasonably.

teachers employed in such private, denominational or parochial schools when this act takes effect shall have until September first, 1925, to obtain a legal certificate as herein provided.

Mich.Comp.Laws § 388.553.

The immediately preceding section makes it clear that the phrase "any private, denominational or parochial school" would include the Hansons' home school:

A private, denominational or parochial school within the meaning of this act shall be any school other than a public school giving instruction to children below the age of 16 years, in the first 8 grades as provided for the public schools of the state, such school not being under the exclusive supervision and control of the officials having charge of the public schools of the state.

Mich.Comp.Laws § 388.552.

It is therefore the opinion of this Court that the Michigan statutes and practices in question are constitutional. Plaintiffs have failed to set forth sufficient facts upon which either legal or equitable relief can be granted. Defendants' motions to dismiss the complaint for failure to state a claim is therefore granted, and the case is hereby dismissed.